Richard A. Beshwate, Jr., Esq., (SBN 179782)
LAW OFFICE OF RICHARD A. BESHWATE, JR.
1330 "L" Street, Suite D
Fresno, CA 93721
Phone: (559) 266-5000
Email: attybesh@gmail.com

Attorney for Defendant
DAVID JAHVE NIN

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID JAHVE NIN,<br><br>Defendant. | Case No.: 1:18-CR-00078-LJO-SKO<br><br>**SENTENCING MEMORANDUM**<br><br>Date: January 21, 2020<br>Time: 8:00 a.m.<br>Dept.: Hon. Lawrence J. O'Neill<br><br>Action Filed: April 12, 2018<br>Trial Date:     December 17, 2019 |

**SENTENCING MEMORANDUM**

# INTRODUCTION

David Nin ("Mr. Nin" or "Defendant") stands before this Court after pleading guilty to violating Title 18, United States Code, section 2252(a)(2), Receipt and Distribution of Material Involving the Sexual Exploitation of Minors. The United States Probation Office ("USPO") has prepared a Presentencing Report ("PSR") in which they request this Court sentence Mr. Nin to a prison term of 200 months. Mr. Nin requests this Court depart from the sentencing recommendation and sentence him to a term of 120 months followed by an inpatient treatment program of significant length on the grounds that he suffers from significant health issues and a sentence of 200 months is tantamount to a life term.

# BACKGROUND

## 1. Presentencing Report Factual Contentions

In October 2015, the Department of Homeland Security agents in Phoenix, Arizona, began conducting undercover operations on an Internet based video conferencing application "Zoom" (or Zoom rooms), searching for individuals who were using the platform to exchange child pornography. (PSR ¶ 5.) Between November 2015 and August 2017, Mr. Nin was observed and tracked entering Zoom rooms which were known, according to the investigation, to display child pornography. (Id. ¶¶ 7-14.) On August 30, 2017, Homeland Security agents served a search warrant at Mr. Nin's home. Mr. Nin admitted, post-Miranda, that he most likely had some amount of child pornography in his possession. (Id. ¶ 14.) At the time of his arrest, Mr. Nin was also in possession of identity theft material. (Id. ¶ 15.) On November 4, 2019, Mr. Nin was interviewed by USPO personnel and during this interview; Mr. Nin took full responsibility for possession of material involving the sexual exploitation of minors. (Id. ¶¶ 18-20.) In an effort to further his cooperation with authorities and atone for his crime, Mr. Nin went on to describe in great detail his criminal enterprise. (Id.)

On October 28, 2019, Mr. Nin pled guilty to a violation of Title 18, United States Code, section 2252(a)(2), Receipt and Distribution of Material Involving the Sexual Exploitation of Minors. In exchange for Mr. Nin's plea, the government agreed to recommend a three-level reduction in Defendant's offense level for his demonstration of acceptance of responsibility is appropriate under USSG section 3E1.1. (Memorandum of Plea Agreement ("MOP") 7:21-23).)

2.  **United States Probation Department's Offense Level Computation**

The USPO prepared a PSR on or about December 10, 2019. According to the PSR, Mr. Nin' base level offense is 22. (PSR ¶ 22.) After application of various level increases and decreases based on the specific aspects of the Defendant and his criminal behavior, USPO arrived at a total offense level of 30. (PSR ¶¶ 22-35.) Mr. Nin does not dispute USPO's criminal history computation which places Mr. Nin in category VI. (PSR ¶¶ 37-54.) Therefore, according to the USSG sentencing table, the appropriate sentencing range for the instant offense is 168-210 months imprisonment. (PSR at 3.) Despite the guideline range mentioned herein; this Court has discretion to sentence Mr. Nin to the 60-month minimum term of imprisonment. 18 U.S.C.S. § 2252(b)(1).

## ARGUMENT

1.  **General Principles re Federal Sentencing**

[Title 18, United States Code, section 3553(a)] contains an overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The statute further provides that, in determining the appropriate sentence, a court should consider a number of factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the sentencing range established by the U.S. Sentencing Guidelines Manual, any pertinent policy statement issued by the U.S. Sentencing Commission pursuant to its statutory authority, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *Id*. In sum, while the statute requires a court to give respectful consideration to the Guidelines, the court is permitted to tailor the sentence in light of other statutory concerns as well. *Id*.

2.  **Application of the Statutory Sentencing Factors**

In passing sentence, the court need not recite on record all of the considerations Title 18, United States Code, section 3553(a) lists. Rather, it is enough to calculate the guideline range accurately and to explain why (if sentence lies outside it) defendant deserves more or less. *United*

2
SENTENCING MEMORANDUM

*States v. George*, 403 F.3d 470 (7th Cir. 2005). However, it is an incorrect application of the Guidelines for a district court to depart from the applicable sentencing range based on a factor that the Commission has already fully considered in establishing the guideline range. *United States v. Huckins*, 53 F.3d 276, 280 (9th Cir. 1995). In the instant case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary to satisfy the purposes of sentencing.

### A.   The Nature and Circumstances of the Offense

There is no argument as to the seriousness of the offense. The community sentiment in opposition to such criminal behavior is adequately reflected in the congressional imposition of a sentence of up to 20 years of incarceration. Mr. Nin readily admitted his role in this crime. Mr. Nin was very candid with the USPO during his interview and although he was wrong, his admissions tends to show Mr. Nin' sense of right and wrong and his capacity for honesty. Although Mr. Nin was in possession of a considerable amount of pornography involving minors, Mr. Nin requests this Court take note that he immediately took responsibility for his actions by cooperating with the government, negating the need for an expensive trial. Mr. Nin is not attempting to minimize his criminal act, but simply requests this Court note the crime was nonviolent in nature and by his words, unintentional.

### B.   History and Characteristics of the Defendant

Mr. Nin's childhood had great beginnings but began to derail following his coming out to his family that he was homosexual. His family was unaccepting of Mr. Nin's sexual orientation due to the family's Catholic faith. (PSR ¶ 65.) Despite his family distancing themselves from him, Mr. Nin persevered and did in fact graduate from high school and attend the prestigious UC San Diego where he nearly obtained his degree in biology. (*Id.* ¶ 75.) Despite all the hardships in Mr. Nin life, he does have legitimate means to earn money should he be given an opportunity to overcome his drug addiction and be gainfully employed in his field of choice.

### C.   Drug/Alcohol Abuse

As a result of Mr. Nin's health issues and mental health "triggers" he turned to drugs and alcohol to comfort his depression. (PSR ¶ 72-73.) Mr. Nin's use of alcohol quickly progressed to daily use of cocaine and methamphetamine. (*Id.* at 72.) His use of this powerfully addictive drug

(methamphetamine) soon thereafter became a daily habit. (*Id.*) Based on Mr. Nin's drug history, it would be extremely beneficial for him to receive significant drug treatment. The Bureau of Prisons is well equipped to provide Mr. Nin with the help he needs while incarcerated for his addictions and thus reduce his potential to re-offend.

### D. Mr. Nin' Criminal History

Mr. Nin's criminal history reveals a person who made mistakes in his early years with much of his history based on his family disconnect and substance abuse. Mr. Nin is still a young man by all measures and has time to turn his life around. This Court should note that Mr. Nin' criminal history is rife with property crimes, seemingly to feed his drug addiction. Mr. Nin does not have a violent history. Once Mr. Nin can overcome his addictions, he has the potential and desire to become a positive and contributing member of society. At this point in his life, he wants nothing more than to prove to himself and this Court that he can overcome his addiction.

### E. The Need for the Sentence Imposed

The traditional goals of sentencing, as outlined in Title 18, United States Code, section 3553(a)(2), are punishment, deterrence, protection of society and rehabilitation. Mr. Nin would ask this Court to consider rendering a sentence that is sufficient, but, not greater than necessary, to comply with these goals. The advisory guideline range as calculated in the PSR accurately takes into account the severity of his actions. The applicable statutes mandatory minimum sentence of 60 months shows careful consideration of a defendant such as Mr. Nin.

For example, Mr. Nin was very candid with the government when they came to interview him regarding his criminal charges. Mr. Nin even went as far as to explain how the software and "Zoom rooms" worked. Furthermore, he explained his method of downloading, storing and cataloging his contraband. Secondly, Mr. Nin accepted responsibly very early into the investigation; thus, saving the government the expense and time of trial. Lastly, Mr. Nin suffers from several debilitating illnesses which require constant monitoring. Mr. Nin has suffered from kidney failure and has received multiple transplants. He also suffers from a life-threatening chronic illness. A sentence of 200 months would essentially be a death sentence.

The goals of sentencing would be equally served by sentencing Mr. Nin to the 120 months and allowing him to attend an extensive inpatient treatment program following his incarceration and a lengthy period of supervision. For example, Delancey Street offers a two (2) to four (4) year program with an amazing track record to address the addiction Mr. Nin suffers from. A period of incarceration of 120 months is adequate to comply with the statutory directives of Title 18, United States Code, section 3553(a) for Mr. Nin based on his history of drug addiction and plethora of health concerns.

## CONCLUSION

Mr. Nin does not stand before this Court arguing he should not be punished for his conduct. Mr. Nin only requests when this Court imposes its sentence, it be based upon accurate facts, and takes into consideration all the statutory factors outlined in Title 18 United States Code, section 3553. Mr. Nin understands that a period of incarceration is warranted and hopes upon receipt of appropriate drug treatment, he is given the opportunity to become a productive member of society. Mr. Nin prays this Court exercise its discretion and sentence him to a term of 120 months of incarceration and afford him any other relief this Court deems equitable.

Date:   January 13, 2020            LAW OFFICE OF RICHARD A. BESHWATE, JR.


                                    /s/ Richard A. Beshwate, Jr.
                                    RICHARD A. BESHWATE, JR.
                                    Attorney for Defendant
                                    DAVID JAHVE NIN